| | |
|---|---|
| ALAN BRENT WILKINS,<br><br>Plaintiff,<br><br>v.<br><br>CONSOLIDATED COMMUNICATIONS HOLDINGS, INC. D/B/A CONSOLIDATED COMMUNICATIONS, INC.,<br><br>Defendant. | Case No. 5:23-CV-655-FL |

### PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION OF THE COURT'S SUMMARY JUDGMENT ORDER

Plaintiff respectfully files this Memorandum in support of his Motion seeking to alter or amend the judgment pursuant to Rule 59(e) and Rule 60(b)(6) of the Federal Rules of Civil Procedure.

### STANDARD OF REVIEW

Under Rule 59(e), a party may move to "alter or amend a judgment" within 28 days of entry of the judgment. Fed. R. Civ. P. 59(e). Although the rule does not specify what grounds justify such a motion, the Fourth Circuit has held that a court may grant a Rule 59 motion in three circumstances: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice. *Bogart v. Chapell*, 396 F.3d 548, 555 (4th Cir. 2005). "In other words, the rule gives the district court a chance to correct its own mistake if it believes one has been made." *McMllian v.*

1

*Wake Cnty. Sheriff's Dep't,* No. 5:08-CV-342-FL, 2010 WL 11619695, at *2 (E.D.N.C. Apr. 21, 2010) (J. Flanagan). The same legal standards apply to a motion under Rule 60(b)(6).

"An award of summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Bogart v. Chapell*, 396 F.3d 548, 555 (4th Cir. 2005) (internal citations and quotations omitted).

## **RELEVANT FACTS FROM COURT'S ORDER**

Plaintiff incorporates by reference his Response to Defendant's Statement of Facts ("Response SOF") and his Statement of Additional Material Facts (SAMF) filed in opposition to the Defendant's Motion for Summary Judgment. [D.E. 32].

Plaintiff was hired by the Defendant as the Director of Business Development on February 22, 2021. [SAMF ¶ 2]. Based on communications with Defendant, Plaintiff understood that he would be paid a base salary plus commissions on the amount of revenue he generated in cash. [SAMF ¶ 4]. Until the TowerCo Deal (defined in the Court's Order, D.E. 38, p 3), Plaintiff was paid commissions on all business development deals and sales that he closed while employed by Consolidated. [SAMF ¶ 5].

For background and perspective on the specific issues raised in Plaintiff's Motion for Reconsideration, the following facts are quoted directly from the Court's Summary Judgment Order. [D.E. 38].

"In November, 2021, plaintiff became involved in a transaction by which defendant sought to sell 49 wireless towers across 22 states (the "TowerCo Deal"). (Id. ¶¶10–11). Some, though not all, of the towers were no longer generating any revenue, and 12 had physically collapsed. (Id. ¶ 11; Pl's SMF ¶ 11). Plaintiff believed he would receive a commission on the TowerCo Deal,

structured similarly to a commission he had received on another recent transaction, though he never received any affirmative communication from defendant to this effect. (Def's SMF ¶ 12; Pl's SMF ¶ 12). Plaintiff received a 2022 sales commission plan from defendant's director of compensation on July 14, 2022. (Def's SMF ¶ 13). Plaintiff declined to sign the plan until compensation for the TowerCo Deal was agreed upon, because plaintiff believed defendant had sent the plan shortly before the first step in the closing of the TowerCo Deal in an effort to reduce his commission. (See Def's SMF ¶ 14; Pl's SMF ¶ 14). Plaintiff testified that he received a sales commission plan in 2021, and believed the 2022 edition was "probably the same thing," though plaintiff now notes that he was never placed under any such plan for 2021. (Def's SMF ¶ 16; Pl's SMF ¶ 16)." [D.E. 38, p 3].

The Court also correctly noted the following: "The parties dispute whether defendant had ever paid commissions on asset deals before, or whether special compensation for such transactions was entirely discretionary. (Id. ¶ 33; Pl's SMF ¶ 33). They further dispute how much revenue plaintiff generated for defendant in 2022. (Def's SMF ¶ 38; Pl's SMF ¶ 38)." [D.E. 38, pp, 4-5]

## ARGUMENT[1]

Plaintiff respectfully contends that reconsideration is necessary to correct clear errors of law and prevent manifest injustice.

### I. Violation of the North Carolina Wage and Hour Act

---

[1] In recognition of the relevant legal standard, Plaintiff focuses his argument on "clear" errors of law. Plaintiff expressly reserves the right to raise other issues on appeal, including arguments concerning factual disputes, such as with Plaintiff's Unjust Enrichment claim, where the Court ruled that the bonus payment of $100,000 was "fair" compensation as a matter of law despite the following undisputed facts (1) the company secured $21.2M cash for the transaction; (2) the contract value was more than four times Plaintiff's quota; and (3) Defendant's Chief Financial Offer wrote that Plaintiff's plan (if applicable) would have resulted in a commission payment of more than $400k for the transaction.

3

a. **Legal Sufficiency of Notice.** With respect to Plaintiff's claims under the NCWHA, the central focus of this Motion is whether the Defendant's delivery of the 2022 Sales Commission Plan (on July 14, 2022) was sufficient notice under the NCWHA to cancel or eliminate any *commissions* due Plaintiff on the TowerCo Deal. In its Order, the Court stated that it did not need to address "what categories of transactions were commission eligible under defendant's policies and practices, and whether the TowerCo Deal fits into at least one such category." [D.E. 38, p. 7]. The Court labeled as "thorny" the question of whether the TowerCo Deal was commission eligible. *Id*. Instead, the Court concluded that, even if you assume "the TowerCo Deal was otherwise commission eligible," the 2022 Sales Commission Plan ("Commission Plan") "provided the requisite notice that plaintiff would receive no commission thereon." *Id*.

*Kornegay v. Aspen Asset Grp., LLC*, 204 N.C. App. 213, 693 S.E.2d 723 (2010) is the key North Carolina appellate case addressing the legal sufficiency of a notice to cancel or forfeit bonuses or commissions. In *Kornegay*, the "defendants sent plaintiff a memo stating that they would not pay him any bonuses or commissions 'until Aspen sees fit & confident we are making money.' " *Kornegay v. Aspen Asset Grp., LLC*, 204 N.C. App. 213, 228, 693 S.E.2d 723, 735 (2010). The *Kornegay* Court considered Aspen's notice of cancellation or forfeiture insufficient because "nothing in the memo states that Aspen is in fact eliminating the bonus." *Id*. In support of its decision, the Court quoted the North Carolina Administrative Code which provides that "ambiguous policies and practices [relating to bonuses and commissions] shall be construed against the employer and in favor of the employee." *Kornegay v. Aspen Asset Grp., LLC*, 204 N.C. at 229, 693 S.E.2d at 735 (201, *quoting*, N.C. Admin. Code tit. 13, r. 12.0307(c). The Court concluded that "our General Assembly" did not intend "to allow a bonus or commission to be cancelled or forfeited with the use of such a vague notice." *Id*.

4

Like *Kornegay*, nothing in the Defendant's 2022 Commission Plan states that Defendant was eliminating, cancelling, or forfeiting Plaintiff's commissions on the TowerCo Deal. While the Commission Plan provided that "Commissions were based on the sale of qualified products and services…" [Commission Plan, p 2, D.E. 33-2, p 315], "qualified products and services" were not defined in the Definitions section of the Commission Plan and, under the section labeled "Qualified Products and Services," the Commission Plan simply provided that "[t]he following are the Consolidated Communications services and products that *can* qualify for commission." [Commission Plan p. 3, D.E. 33-2, p. 316, *emphasis added*]. The Commission Plan did not expressly provide that the three categories of "products and services" were the only items, products, or assets which were commission eligible. In fact, the Commission Plan specifically confirmed that the sale of an Indefeasible Right of Use (IRU) had to qualify not only as a "qualified product or service" but also as an "asset sale" (or a Pre-Paid Lease) to be commissionable. (SAMF 16; D.E. 26-1 p 294, ¶ 3). In other words, the Commission Plan acknowledged that "asset sales" were commission-eligible (apparently under another practice or plan) and an IRU was required to be structured to meet the qualifications of an "asset sale" to be commission eligible. [Commission Plan, p.5, ¶ 3, D.E. 33-2, p 318, ¶ 3].

Even though the Defendant's managers knew Plaintiff had been working on the TowerCo Deal for more than eight (8) months, the Commission Plan did not address the TowerCo Deal and did not expressly eliminate commissions on the TowerCo deal. [D.E. 33-2]. Instead, the Plan simply listed three categories of "services and products" that could qualify for commissions. When the 2022 Sales Commission Plan was presented, there was still "confusion" as to how commissions would be paid on an asset sale and whether an asset sale is also a revenue deal (Response SOF ¶ 15). Because of the ambiguity and uncertainty in the Commission Plan with respect to the

5

TowerCo Deal, Plaintiff refused to sign the Commission Plan Acknowledgment. [Commission Plan, p. 10, D.E. 33-2, p 323].

The terms of the Commission Plan Acknowledgment [D.E. 33-2, pp 321-323] create additional ambiguity and confusion. Paragraph A of the Commission Plan Acknowledgment ("Plan Acknowledgment") provides that the "Plan is effective on the Plan start Date" but the "Plan Start Date" is not identified or defined. Instead, the words "Effective as of January 1, 2022" were merely inserted on the cover page of the Commission Plan. [D.E. 33-2, p. 314]. Contrary to the summary language on the cover page, the last paragraph of the Plan Acknowledgment specifically provided that the Commission Plan was to begin on the effective date when the Plan Acknowledgement was signed and dated by the Plaintiff and the Vice President – Carier Services & business Development.[2] [D.E. 33-2, p 323].

Drawing all justifiable inferences in favor of the Plaintiff, the Plan Acknowledgement was specifically designed to implement the Commission Plan on the effective date that it was signed. The Commission Plan and Plan Acknowledgment were not designed to serve as notice to Plaintiff that commissions would not be paid on the TowerCo Deal. If we assume the TowerCo Deal was commission eligible, Plaintiff's commissions could not be forfeited or cancelled without addressing, or even referencing, the TowerCo Deal. *Kornegay v. Aspen Asset Grp., LLC*, 204 N.C. App. 213, 228, 693 S.E.2d 723, 735 (2010). Further, the Court's determination that Consolidated provided adequate notice under the NCWHA was also error because it did not address whether the 2022 Sales Commission Plan constituted a retroactive decrease in promised wages and/or an improper forfeiture of wages based on commissions under N.C. Gen. Stat. § 95-25.7. Finally, the

---

[2] The specific language in the last paragraph of the Plan Acknowledgement was, "[t]he Plan begins on the effective date *below* and replaces any and all prior plans or arrangements in effect." [D.E. 33-2, p 323; *emphasis added*]. Signature blocks and dates for execution follow this provision thereby formally defining the effective date of the Commission Plan.

6

2022 Sales Commission Plan, even if applicable as a "forfeiture notice," addressed only commissions which were earned or booked after the termination of Brent's employment. (SAMF ¶ 17). *See, Kornegay*, 204 N.C. App. 213, 229, 693 S.E.2d 723, 735 (2010) ("We do not believe that our General Assembly intended to allow a bonus or commission to be cancelled or forfeited with the use of such a vague notice.")

Plaintiff contends that it would be manifestly unjust to forfeit and take away Plaintiff's commissions on the eve of a final closing with a vague, confusing, and internally inconsistent Commission Plan which was not drafted or designed as a formal forfeiture notice or notice for the retroactive elimination of commissions on a specific deal.

      b.      **Practice of Paying Commissions on Total Cash Value of the Sale.** The Court also misunderstood Plaintiff's argument with respect to the relevance of Consolidated's internal characterization of the materially similar CBRS Spectrum potential transaction, which was labeled an "asset" deal by Consolidated like the TowerCo deal. (SAMF ¶ 15; Def Doc. Bates numbered 004023 (Carr referring to the CBRS Spectrum deal as an "asset purchase transaction"). The CBRS Spectrum transaction is relevant to show that Consolidated paid Plaintiff a commission based on of Total Contract Value (TCV) of the sale. At no point did Plaintiff secure a contract for the company and not receive a commission based on TCV *until* the TowerCo deal. Defendant's practice of paying commissions on contracts secured confirmed Plaintiff's understanding of the Defendant's commission structure. Even when addressing TowerCo compensation in Plaintiff's annual performance review, Flanagan (Plaintiff's direct supervisor) included the TowerCo contract as part of his Total Cash Value ("TCV") calculation for the year. [D.E. 26-1, Manager Comments, p. 283]. Thus, Plaintiff's argument with respect to the materially similar CBRS Spectrum Deal is <u>not</u> that Consolidated agreed to pay Plaintiff a commission on the CBRS Spectrum deal *despite*

7

the 2022 Sales Commission Plan, but evidence of Defendant's policy and practice of paying Plaintiff commissions on sales based on TCV. Moreover, it is another example of Consolidated taking advantage of Plaintiff and its own ambiguous policies and practices because they did not tell him the deal was <u>not</u> commissionable when he began working on the TowerCo Deal. This unnecessary dispute is precisely why such ambiguous policies and practices are prohibited under North Carolina law. *Kornegay v. Aspen Asset Grp., LLC*, 204 N.C. App. 213, 693 S.E.2d 723 (2010).

Finally, the Court failed to construe Consolidated's ambiguous policies and practices in Plaintiff's favor in accordance with North Carolina law. *See Id.,* and 13 *N.C. Admin. Code* 12.0307(c). As the Court's Order recognizes, Consolidated did not produce a written Sales Commission Plan applicable to Plaintiff before the 2022 Sales Commission Plan. {D.E. 38, p 2]. Until the TowerCo Deal, Defendant had a practice of paying Plaintiff commissions on every sale. It appears that the only reason the Court did not make such a finding is due to its conclusion that "the testimony in question is merely that plaintiff received some form of compensation for all his sales, not commissions in particular." [D.E. 38, p. p 9]. The Court's conclusion here is contradicted by discovery, which documents that prior to the TowerCo Deal, Plaintiff received commissions on **<u>every</u>** sale he made.[3] In fact, no individual with a sales commission plan has ever been paid a discretionary bonus at Consolidated other than Plaintiff's purported bonus on the TowerCo. (Flanagan Dep., at 102:14-18). Thus, the only policy and practice prior to the 2022 Plan

---

[3] It is undisputed that Plaintiff received a commission on every sale prior to the TowerCo Deal. Defendant produced a "PeopleSoft Payroll Register Detail" which details all the compensation paid to Plaintiff, and all payments to Plaintiff, other than his standard wage and the $100,000 TowerCo "bonus," were marked as "COM." Pamela Lehrke testified that COM stood for commission. Plaintiff did not include Exhibit 2 of Ms. Lehrke's deposition as part of his Response since this fact was undisputed by the parties. If the Defendant disputes this fact in its Response, we respectfully request permission to file the Exhibits and discovery documents which establish this fact.

was that Plaintiff would be paid a commission based on the TCV for every sale he made for Consolidated. ((SAMF ¶ 5; Flanagan Depo. p 111:1-6). To the extent the plan or policy is ambiguous, it must be construed against the employer, and on summary judgment, the Plaintiff is entitled to every inference regarding the same.

      **c.** **Execution of the Sales Commission Plan.** In its Order the Court concluded that execution of the Sales Commission Plan and consent of the Plaintiff was not required to comply with the notice provisions of N.C. Gen. Stat. § 95-25.13(3). The problem with this conclusion is that it does not consider the plain language of the Commission Plan Acknowledgement [D.E. 33-2, pp. 321-323]. The Commission Plan Acknowledgment implements the Commission Plan and specifically makes the Commission Plan effective on the date when the Plan Acknowledgment was signed and dated by the Plaintiff and the Vice President – Carrier Services & Business Development. [D.E. 33-2 p 323]. At a minimum, Defendant's ambiguous and internally inconsistent Commission Pay Plan and Commission Plan Acknowledgement are questions of fact for a jury. Regardless of whether this entire document is considered a commission plan or notice of forfeiture or reduction of wages, by its express terms which were drafted by the Defendant, it was not effective until signed and dated. *Id*. It was never signed and dated. *Id*. Plaintiff agrees that the consent of the Plaintiff is not required if the Defendant timely provides notice that it is forfeiting or reducing Plaintiff's commissions. N.C. Gen. Stat. § 95-25.13(3). However, if Defendant had intended to eliminate commissions on the TowerCo Deal, Defendant could have simply delivered to the Plaintiff a one paragraph notice clearly advising him that the TowerCo Deal was not commission eligible. Instead, Defendants tossed out an ambiguous 11-page Commission Plan with an inconsistent Commission Plan Acknowledgement and failed to even address the TowerCo Deal after Plaintiff had been working on the deal for eight (8) months.

9

Each of the preceding reasons warrant reconsideration and reversal of the Court's Order.

**II. Plaintiff's breach of contract claim presents factual issues for a jury because Consolidated paid Plaintiff a commission on every sale prior to assigning Plaintiff the TowerCo Deal.**

The "at will" doctrine does not preclude an at-will employee from suing for breach of contract with respect to benefits or compensation to which the parties contractually agreed. *Bigelow v. Sassafras Grove Baptist Church*, 247 N.C. App. 401, 405, 786 S.E.2d 358, 362 (2016). Under North Carolina law, the "elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." *Health & Beauty Techs., Inc. v. Merz Pharma GMBH KGAA*, No. 7:18-CV-117-FL, 2020 WL 96571, at *4 (E.D.N.C. Jan. 8, 2020) (J. Flanagan).

As discussed in section I(b) above, Plaintiff repeatedly testified that his agreement with Consolidated included commissions on all sales that he made. At no point has Consolidated denied that Plaintiff received commissions on every sale he made *other than* the TowerCo deal. ((SAMF ¶ 5; Flanagan Depo. p 111:1-6). Flanagan's inclusion of the total contract value of the TowerCo Deal in the calculation for TCV in Plaintiff's written annual performance review further substantiates the parties' understanding. [D.E. 26-1, Manager Comments, p. 283].

The Court rejected this argument on the basis that Flanagan "clarified" that his statement had apparently nothing to do with compensation. To the extent the Court has accepted the Defendant's "clarification," the Court has weighed facts and denied Plaintiff a reasonable inference with respect to the parties' agreement. A reasonable jury could find the parties agree Plaintiff would receive commissions for every sale based on the total contract value (TCV) and that the agreement was breached when Consolidated unilaterally determined that Plaintiff was not entitled to a commission for the TowerCo deal.

## **CONCLUSION**

For the reasons stated herein, Plaintiff respectfully requests this Court GRANT his Motion for Reconsideration for the foregoing reasons.

Respectfully submitted, this 11th day of April, 2025.


*s/ Bijan K. Ghom*
Bijan K. Ghom
Saxton & Stump, LLC
151 Meeting Street, Suite 400
Charleston, SC 29401
(843) 414-5080
bkg@saxtonstump.com
SC Bar# 103531
Attorney for Plaintiff


*s/ Raymond E. Dunn, Jr.*
Raymond E. Dunn, Jr.
Dunn, Pittman, Skinner & Ashton, PLLC
3230 Country Club Road
New Bern, NC 28563
rdunn@dunnpittman.com
(252) 633-3800
Fax (252) 633-6669
NC Bar# 8739
Local Rule 83.1 (d) Counsel for Plaintiff

CERTIFICATE OF WORD COUNT UNDER LOCAL RULE 7.2(f)(3)

I hereby certify that this Memorandum complies with the word count limit set forth in Local Rule 7.2(f)(3). This Memorandum contains 3551 words according to the word count function of Microsoft Word used to prepare this Memorandum.

This the 11th day of April, 2025.

*s/ Bijan K. Ghom*
Bijan K. Ghom
Saxton & Stump, LLC
151 Meeting Street, Suite 400
Charleston, SC 29401
(843) 414-5080
bkg@saxtonstump.com
SC Bar# 103531
Attorney for Plaintiff

*s/ Raymond E. Dunn, Jr.*
Raymond E. Dunn, Jr.
Dunn, Pittman, Skinner & Ashton, PLLC
3230 Country Club Road
New Bern, NC 28563
rdunn@dunnpittman.com
(252) 633-3800
Fax (252) 633-6669
NC Bar# 8739
Local Rule 83.1(d) Counsel for Plaintiff

CERTIFICATE OF SERVICE

I hereby certify that I electronically filed this Memorandum in Support of Plaintiff's Motion for Reconsideration with the Clerk of Court using the CM/ECF system which will send notification of such filing to counsel identified below:

William J. McMahon, IV
Nia J. Doaks
Constangy, Brooks, Smith & Prophete, LLP
One West Fourth Street, Suite 850
Winston-Salem, NC 27101
bmcmahon@constangy.com
ndoaks@constangy.com
Attorneys for the Defendants

This the 11th day of April, 2025.

s/ Bijan K. Ghom
Bijan K. Ghom
Saxton & Stump, LLC
151 Meeting Street, Suite 400
Charleston, SC 29401
(843) 414-5080
bkg@saxtonstump.com
SC Bar# 103531
Attorney for Plaintiff

s/ Raymond E. Dunn, Jr.
Raymond E. Dunn, Jr.
Dunn, Pittman, Skinner & Ashton, PLLC
3230 Country Club Road
New Bern, NC 28563
rdunn@dunnpittman.com
(252) 633-3800
Fax (252) 633-6669
NC Bar# 8739
Local Rule 83.1(d) Counsel for Plaintiff

13